LEMMON, Judge.
The issue in plaintiff’s appeal from the dismissal of his workmen’s compensation suit is the sufficiency of his evidence as to any disability caused by a work-related accident.
Plaintiff, a 43-year old general laborer for defendant building contractor, was injured on December 12, 1973 when scaffold boards fell on his head which was protected by a safety hat. The following day he complained of pain in the neck and was sent to an industrial medicine clinic, where he received frequent (55 in total number) heat treatments for acute cervical sprain through April 26, 1974, at which time he was discharged as cured.[1] There was one more office visit about two weeks later.
In the meantime plaintiff had returned to work immediately after the accident. He was assigned light duties, mainly sweeping, light cleaning and supervision of laborers, for about 1 xh months, and then'resumed his regular duties. He left defendant’s employment on May 23, 1974 because “the work began to get too hard”.
Plaintiff thereafter obtained a job with another construction company.[2] He eventually secured regular employment as a cook in a hotel, where he was working at the time of his deposition on April 18,1975. In the deposition he stated his neck “still bothers me every once and a while” (although at trial in February, 1976, when he was still working as a cook, he testified that his neck “hurts me all the time”), and he had not consulted a doctor in the year that elapsed since he was discharged from the clinic.
On September 17, 1975, plaintiff consulted a neurosurgeon, who found limitation of cervical spine motion in all directions, without radiation of pain, and degenerative narrowing of the fifth and sixth disc spaces shown by X-rays. 'The doctor diagnosed degenerative cervical disc disease with secondary neck pain. Since the changes shown on the X-rays could develop in two years, the doctor admitted “there’s no way for me to know whether he had the degenerative change prior to the accident or it developed subsequent to the accident”, although he thought the injury was probably superimposed on the disease and produced symptoms which would last longer than a sprain on a non-diseased neck. The doctor’s records showed no complaints of shoulder pain, and he specifically noted there was no true brachial plexus tenderness. He opined that heavy manual labor “would probably make it (pain related by patient) worse”.
The only other physician presented, an orthopedic surgeon, examined plaintiff two months later. He found no limitation of neck motion and no other objective clinical findings relative to the neck, although he noted on X-rays the changes in the cervical spine. He also stated he could not deter *380 mine whether the condition predated the accident.
As the only positive clinical finding, the orthopedist noted a limitation in the last five degrees-of shoulder motion on abduction (lifting the arms from the side over the shoulder), which he classified as a minor limitation. From this finding, from preex-istent degenerative changes (observed on X-rays) in the shoulder associated with calcification and bursitis, and from the history of the accident, he diagnosed degenerative tendinitis (inflammation of the tendon) aggravated by the accident as the cause of some of the neck pain.[3] He was reinforced in the belief that trauma precipitated the pain by the fact that calcification was present on both sides and symptoms occurred only on the side which he believed had been injured.[4]
Plaintiff’s proof problems were considerable because of the void in medical treatment and consultation between plaintiff’s termination of work (five months after the accident) and the dates of the examinations of the testifying physicians (almost two years after the accident). Furthermore, the neurosurgeon’s sole clinical finding at that time of motion limitation in the neck was contradicted by the orthopedic surgeon. On the other hand, the orthopedist’s sole clinical finding of degenerative changes in the shoulder on the right side was not supported as to causation, because the record is completely devoid of any evidence of trauma to the shoulder or of any complaints of shoulder pain at any time relative to the accident.
On the basis of the overall evidence the trial judge could reasonably have concluded that plaintiff’s proof did not show any injury caused by the December, 1973 accident which resulted in any total or partial disability.
The judgment is affirmed.

AFFIRMED.

. The treating physician from the clinic and the clinic’s two orthopedic consultants were not presented at trial. The treating physician’s report, introduced into evidence by stipulation, indicated plaintiff was considered able to resume work on the date of first treatment.

. The record is virtually void of information as to the regularity of plaintiffs employment before he went to work for defendant, two months prior to the accident. Plaintiff did testify that the only type of work he had ever done was pouring concrete and rolling concrete with wheelbarrows for various individuals (as opposed to larger subcontractors).

. The doctor stated:
“A. The degenerative changes (of the shoulders) are bilateral and they undoubtedly preexisted the accident. The blow on the shoulder causing pain on the changes is very consistent.
“Q. As a result of this accident did you form an opinion?
“A. Yes. In regard to the shoulder I felt he had limited motion of the shoulder and he had degenerative tendinitis by X-rays and the both of them both of them together I felt explained at least some of his pain which he described as neck pain, but it was in the general area of muscles that supply both shoulder and neck and I thought some of the problem was due to the degenerative tendinitis which by history had been aggravated by trauma.” (Emphasis supplied)

. On this point the doctor observed:
“In Mr. Smith the injury was to the right side and the left side although it has the calcification does not have a symptom. And this is not uncommon to find bilateral changes of degenerative tendinitis or arthritis with symptoms on one side and the side having a history of injury. Of course, I have no way of knowing if the history is correct and as a physician I would take the history at face value.” (Emphasis supplied)